Kerry W. Kircher, General Counsel (D.C. Bar 386816), Kerry.Kircher@mail.house.gov
William Pittard, Deputy General Counsel (D.C. Bar 482949), William.Pittard@mail.house.gov
Isaac B. Rosenberg, Assistant Counsel (D.C. Bar 998900), Isaac.Rosenberg@mail.house.gov
Sarah E. Clouse, Staff Attorney (MA Bar 688187), Sarah.Clouse@mail.house.gov

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C.  20515
202-225-9700 (telephone)
202-226-1360 (facsimile)

*Counsel for Respondent the Honorable Cynthia Lummis,*
*U.S. Representative for Wyoming*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| JACQUELINE S. JUDD,<br><br>      Petitioner,<br><br>  v.<br><br>CYNTHIA LUMMIS,<br>U.S. Representative for Wyoming,<br><br>      Respondent. | Case No. 2:15-cv-00064-SWS |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## MOTION TO DISMISS OF RESPONDENT THE HONORABLE CYNTHIA LUMMIS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................1

BACKGROUND ..............................................................................................................2

ARGUMENT ..................................................................................................................4

    I.     The Petition Must Be Dismissed for Lack of Subject Matter Jurisdiction ........4

          A.     This Suit Is Barred by the Speech or Debate Clause ...........................4

               1.     Overview of the Speech or Debate Clause ................................5

                     a.     History and Purpose of the Clause ...............................5

                     b.     Scope of the Clause.......................................................7

                     c.     Protections of the Clause...............................................9

               2.     The Speech or Debate Clause Precludes This Suit .................10

          B.     This Suit Presents Non-Justiciable Political Questions .......................12

          C.     Ms. Judd Lacks Article III Standing ...................................................14

          D.     This Suit Is Barred by Sovereign Immunity .......................................19

    II.     The Petition Should Be Dismissed for Failure to State a Claim upon Which Relief Can Be Granted ...................................................................................21

CONCLUSION...............................................................................................................24

CERTIFICATE OF SERVICE

EXHIBIT A – Decl. of Todd B. Tatelman (June 8, 2015)

i

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Adams v. Richardson*,
    871 F. Supp. 43 (D.D.C. 1994) ................................................................22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................21

*Arizona v. Manypenny*,
    451 U.S. 232 (1981) ................................................................................21

*Awad v. Ziriax*,
    670 F.3d 1111 (10th Cir. 2012) ..............................................................16

*Baker v. Carr*,
    369 U.S. 186 (1962) ..........................................................................12, 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................21

*Bd. of Cnty. Comm'rs of Sweetwater Cnty. v. Geringer*,
    297 F.3d 1108 (10th Cir. 2002) ..............................................................15

*Bogan v. Scott-Harris*,
    523 U.S. 44 (1998) ..................................................................................9

*Boswell v. Skywest Airlines, Inc.*,
    361 F.3d 1263 (10th Cir. 2004) ..............................................................23

*Bowers v. J & M Disc. Towing, LLC.*,
    472 F. Supp. 2d 1248 (D.N.M. 2006) ....................................................21

*Brown & Williamson Tobacco Corp. v. Williams*,
    62 F.3d 408 (D.C. Cir. 1995) ..................................................................9

*BTU Western Resources, Inc. v. Berenergy Corp.*,
    31 F. Supp. 3d 1346 (D. Wyo. 2014) ......................................................4

*Bullock v. Napolitano*,
    666 F.3d 281 (4th Cir. 2012) ..................................................................21

*Burnett v. Mortg. Elec. Registration Sys., Inc.*,
    706 F.3d 1231 (10th Cir. 2013) ..........................................................21, 22

*Castillo-Hernandez v. Holder*,
    596 F. App'x 645 (10th Cir. 2014) .......................................................................16

*Chrisman v. Comm'r of Internal Revenue*,
    82 F.3d 371 (10th Cir. 1996) ...................................................................15, 16

*Citizens Center v. Gessler*,
    770 F.3d 900 (10th Cir. 2014) ...............................................................14

*Clapper v. Amnesty Int'l USA*,
    133 S. Ct. 1138 (2013)...........................................................................17

*Curley v. Perry*,
    246 F.3d 1278 (10th Cir. 2001) .........................................................2, 22

*Doe v. McMillan*,
    412 U.S. 306 (1973)........................................................................7, 9, 10

*Dorf v. City of Evansville*,
    No. 11-cv-351, 2012 WL 1440343 (D. Wyo. Apr. 22, 2012) .....................................21

*Eastland v. U.S. Servicemen's Fund*,
    421 U.S. 491 (1975)............................................................6, 7, 8, 9, 10

*El-Shifa Pharm. Indus. Co. v. United States*,
    607 F.3d 836 (D.C. Cir. 2010) ...........................................................12, 13

*F.D.I.C. v. Meyer*,
    510 U.S. 471 (1994)..............................................................................19

*Fields v. Office of Eddie Bernice Johnson*,
    459 F.3d 1 (D.C. Cir. 2006) (en banc) ....................................................8

*Gravel v. United States*,
    408 U.S. 606 (1972)........................................................6, 7, 8, 9, 10, 11

*Haceesa v. United States*,
    309 F.3d 722 (10th Cir. 2002) ..............................................................19

*Hanson v. Wyatt*,
    552 F.3d 1148 (10th Cir. 2008) .............................................................12

*Hastings v. U.S. Senate, Impeachment Trial Comm.*,
    716 F. Supp. 38 (D.D.C.) ........................................................................8

*Helstoski v. Meanor*,
    442 U.S. 500 (1979) .........................................................................7, 9, 10

*Houston Bus. Journal, Inc. v. Office of Comptroller of Currency*,
    86 F.3d 1208 (D.C. Cir. 1996) .................................................................20

*Howard v. Office of Chief Admin. Officer of U.S. House of Representatives*,
    720 F.3d 939 (D.C. Cir. 2013) ...................................................................4

*In re Gray*,
    No. 97-6385, 162 F.3d 1172 (10th Cir. 1998)(unpublished) .......................20

*In re Request for Access to Grand Jury Materials*,
    833 F.2d 1438 (11th Cir. 1987) ..................................................................7

*Japan Whaling Ass'n v. Am. Cetacean Soc'y*,
    478 U.S. 221 (1986) ................................................................................12

*Kelley v. Wall*,
    No. 10-cv-00233, 2010 WL 5176172 (D.R.I. Nov. 30, 2010) ....................18

*Kilbourn v. Thompson*,
    103 U.S. 168 (1880) .................................................................................7

*Lance v. Coffman*,
    549 U.S. 437 (2007) ...............................................................................22

*Lane v. Pena*,
    518 U.S. 187 (1996) ...............................................................................19

*Lewis v. D.C. Judiciary*,
    534 F. Supp. 2d 84 (D.D.C. 2008) ...........................................................18

*Liao v. Ashcroft*,
    No. 08-cv-2776, 2009 WL 1066302 (N.D. Cal. Apr. 21, 2009) ..................22

*Luevano v. U.S. Supreme Court*,
    No. 12-cv-00200, 2012 WL 1491865 (D. Haw. Apr. 27, 2012) ..................17

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ....................................................................14, 15, 17

*Marathon Oil Co. v. Lujan*,
    937 F.2d 498 (10th Cir. 1991) .................................................................23

*Marbury v. Madison*,
 5 U.S. (1 Cranch) 137 (1803)..................................................................5

*Massachusetts v. E.P.A.*,
 549 U.S. 497 (2007)............................................................................13

*McGrain v. Daugherty*,
 273 U.S. 135 (1927)..............................................................................8

*Michigan v. U.S. Army Corps of Engineers*,
 911 F. Supp. 2d 739 (N.D. Ill. 2012) .......................................................17

*MINPECO, S.A. v. Conticommodity Servs., Inc.*,
 844 F.2d 856 (D.C. Cir. 1988) ..............................................................8, 9

*Nellis v. Gonzales*,
 No. 06-cv-1704, 2007 WL 1033517 (D.D.C. Mar. 30, 2007) ....................22

*Newell v. Brown*,
 981 F.2d 880 (6th Cir. 1992) .................................................................22

*Orta Rivera v. Congress*,
 338 F. Supp. 2d 272 (D.P.R. 2004)..........................................................17

*People of Colo. ex rel. Suthers v. Gonzales*,
 558 F. Supp. 2d 1158 (D. Colo. 2007)......................................................13

*Peterson v. Hatch*,
 No. 96-4023, 1996 WL 421946 (10th Cir. July 26, 1996)(unpublished) ...................11

*Pinnow v. Shoshone Tribal Council*,
 314 F. Supp. 1157 (D. Wyo. 1970)..........................................................23

*Porteous v. Baron*,
 729 F. Supp. 2d 158 (D.D.C. 2010) ...........................................................8

*Rangel v. Boehner*,
 --- F.3d ----, No. 14-5012, 2015 WL 2145743 (D.C. Cir. May 8, 2015)............. *passim*

*Richards v. Harper*,
 864 F.2d 85 (9th Cir. 1988) ...................................................................22

*Rios v. Ziglar*,
 398 F.3d 1201 (10th Cir. 2005) ..............................................................23

*Robertson v. Colvin*,
  564 F. App'x 931 (10th Cir. 2014) ..........................................................................14

*Rockefeller v. Bingaman*,
  234 F. App'x 852 (10th Cir. 2007) .........................................................4, 11, 19, 20

*Schlesinger v. Reservists Comm. to Stop the War*,
  418 U.S. 208 (1974)...............................................................................................15

*Schneider v. Kissinger*,
  412 F.3d 190 (D.C. Cir. 2005) ...............................................................................13

*Schroder v. Bush*,
  263 F.3d 1169 (10th Cir. 2001) ..............................................................................12

*Singletary v. United States*,
  82 F. App'x 621 (10th Cir. 2003) ...........................................................................21

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
  549 U.S. 422 (2007).................................................................................................4

*Smith v. Cassidy*,
  No. 14-cv-647, 2015 WL 803145 (M.D. La. Feb. 25, 2015).....................................17

*Smith & Lee Assocs., Inc. v. City of Taylor, Mich.*,
  102 F.3d 781 (6th Cir. 1996) ..................................................................................17

*Southway v. Cent. Bank of Nigeria*,
  328 F.3d 1267 (10th Cir. 2003) ................................................................................4

*Sw. Air Ambulance, Inc. v. City of Las Cruces*,
  268 F.3d 1162 (10th Cir. 2001) ..............................................................................23

*Spence v. Flynt*,
  647 F. Supp. 1266 (D. Wyo. 1986)..........................................................................20

*Stewart v. Washington*,
  301 F. Supp. 610 (D.D.C. 1969) (per curiam) ..........................................................24

*Tenney v. Brandhove*,
  341 U.S. 367 (1951).............................................................................................5, 6

*Trimble v. Johnston*,
  173 F. Supp. 651 (D.D.C. 1959) ........................................................................17, 23

*Troutt v. Jones*,
  415 F. App'x 935 (10th Cir. 2011) ............................................................................4

*United States v. Brewster*,
  408 U.S. 501 (1972)........................................................................................8, 9

*United States v. City of Las Cruces*,
  289 F.3d 1170 (10th Cir. 2002) ...........................................................................19

*United States v. Johnson*,
  383 U.S. 169 (1966)........................................................................5, 6, 7, 8, 9, 10

*United States v. Munoz-Flores*,
  495 U.S. 385 (1990)........................................................................................12

*United States v. Myers*,
  635 F.2d 932 (2d Cir. 1980)..................................................................................6

*United States v. Rayburn House Office Bldg.*,
  497 F.3d 654 (D.C. Cir. 2007)...............................................................................9

*United States v. Sherwood*,
  312 U.S. 584 (1941)........................................................................................19

*Utah v. Babbitt*,
  137 F.3d 1193 (10th Cir. 1998) ...........................................................................14

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*,
  454 U.S. 464 (1982).......................................................................................14

*Warth v. Seldin*,
  422 U.S. 490 (1975)........................................................................................15

*Wolff v. United States*,
  76 F. App'x 867 (10th Cir. 2003) ........................................................................20

*Wyoming v. United States*,
  279 F.3d 1214 (10th Cir. 2002) ...........................................................................19

*Youngblood v. DeWeese*,
  352 F.3d 836 (3d Cir. 2003)..................................................................................6

## U.S. Constitution and Statutes

5 U.S.C. § 7311(1) ..................................................................................................23

28 U.S.C. § 1442(a) ................................................................1, 20, 21

Fed. R. Civ. P. 12(b)(1).................................................................1, 21

Fed. R. Civ. P. 12(b)(6)...................................................................1, 2

Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2401(b), 2671-80 .................20, 21

U.S. Const. art. I, § 1 .......................................................................10

U.S. Const. art. I, § 2, cl. 5.......................................................7, 10, 13

U.S. Const. art. I, § 3, cl. 6.........................................................7, 10

U.S. Const. art. I, § 3, cl. 7...............................................................18

U.S. Const. art. I, § 5, cl. 2.........................................................7, 18

U.S. Const. art. I, § 6, cl. 1............................................................1, 4

U.S. Const. art. I, § 8, cl. 3...............................................................10

U.S. Const. art. I, § 8, cl. 4...............................................................10

U.S. Const. art. I, § 9, cl. 7...............................................................10

U.S. Const. art. III, § 2 ....................................................................12

## State Constitutions and State Statutes

Wyo. Const. art. III, § 16 ................................................................24

Wyo. Const. art. III, § 18 ................................................................24

Wyo. Const. art. VI, § 20 ................................................................24

## Legislative Authorities

Rule X(n)(6), Rules of the House of Representatives, 114th Cong. (2015) ...........................3

155 Cong. Rec. H1,2 (daily ed. Jan. 6, 2009) .........................................................2

157 Cong. Rec. H1,2 (daily ed. Jan. 5, 2011) .........................................................2

159 Cong. Rec. H1,2 (daily ed. Jan. 3, 2013) .........................................................2

159 Cong. Rec. H1,49 (daily ed. Jan. 4, 2013) ...........................................................2

161 Cong. Rec. H1,2 (daily ed. Jan. 6, 2015) ...........................................................2

*FCC:  Process and Transparency:  Hearing Before H. Comm. on Oversight & Gov't Reform*,
    161 Cong. Rec. H1665 (daily ed. Mar. 17, 2015)..........................................11

NSA Internal Watchdog Act, H.R. 4533, 113th Cong. (2014)................................................11

## <u>Other Authorities</u>

10B Charles Alan Wright & Arthur R. Miller, Fed. Practice & Proc.
    § 2759 (3d ed. Supp. 2013)..............................................................................19

Official Alphabetical List of the House of Representatives of the United States,
    114th Congress (May 12, 2015).........................................................................3

Press Release, Comm. on Oversight & Gov't Reform, A Constitutional Obligation:
    Congressional Oversight of the Executive Branch (Sept. 22, 2010) ............................3

Press Release, Comm. on Oversight & Gov't Reform, Legislative and Oversight
    Accomplishments of the House Committee on Oversight and Government Reform
    (Dec. 31, 2014) ..........................................................................................3, 11

The Federalist No. 48 (James Madison) ...................................................................5

The Federalist No. 51 (James Madison or Alexander Hamilton) .............................................5

Elizabeth B. Bazan, Cong. Research Serv., 98-186, Impeachment:  An Overview of
    Constitutional Provisions, Procedure, and Practice (2010) .......................................14

T.J. Halstead, Cong. Research Serv., 98-806,
    An Overview of the Impeachment Process 2 (2005)............................................14, 18

## INTRODUCTION

Respondent the Honorable Cynthia Lummis, U.S. Representative for Wyoming, hereby moves pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss this action – initially filed by Petitioner Jacqueline S. Judd in the District Court of the 7th Judicial District, Natrona County, Wyoming ("7th Judicial District")m and removed to this Court by Congresswoman Lummis pursuant to 28 U.S.C. § 1442(a) – asserting claims against the Congresswoman in her official capacity.

Styled as a petition for a writ of mandamus against Congresswoman Lummis, this action generally attacks the Congresswoman for "aiding and abetting" President Obama, whom Ms. Judd characterizes as "a domestic terrorist . . . who has not upheld his oath of the constitution of the United States of America."  Pet. for Writ of Mandamus, Declaratory J., & Permanent Inj. at 2 (Mar. 20, 2015) (ECF No. 2) ("Petition").  Among other things, the Petition complains that Congresswoman Lummis has not pursued the President's impeachment, notwithstanding a raft of allegedly illegal and unconstitutional Executive Branch policies and practices.  *See, e.g., id.* (alleging that Congresswoman Lummis has "not fil[ed] the necessary impeachment process").  The Petition seeks a "writ of mandamus, declaratory judgment, and permanent injunction" against the Congresswoman ostensibly to compel the President's impeachment, *see id.* ¶ k – or, in the absence thereof, seeks Congresswoman Lummis's impeachment, pursuant to the Wyoming state constitution, for allegedly violating her own oath of office, *see id.* at 5, ¶¶ r-s, 1-2.

For at least four independently dispositive reasons, the Court must dismiss the Petition pursuant to Rule 12(b)(1) for want of subject matter jurisdiction.  *First*, the Speech or Debate Clause, U.S. Const. art. I, § 6, cl. 1, absolutely protects Congresswoman Lummis from claims –

like Ms. Judd's – challenging her legislative actions (or inactions), including with respect to impeachment.  *See infra* Argument, Part I.A.  *Second*, Ms. Judd's claims present non-justiciable political questions.  *See infra* Argument, Part I.B.  *Third*, Ms. Judd lacks Article III standing to bring this action.  *See infra* Argument, Part I.C.  And *fourth*, Ms. Judd's claims are barred by sovereign immunity.  *See infra* Argument, Part I.D.  The Court also should dismiss the Petition pursuant to Rule 12(b)(6), with prejudice, because it fails to state a claim upon which relief can be granted and its deficient pleading cannot be cured.  *See Curley v. Perry*, 246 F.3d 1278, 1282 (10th Cir. 2001).

## BACKGROUND

Congresswoman Lummis was elected in 2008 as Wyoming's only representative in the House of the 111th Congress.  *See* 155 Cong. Rec. H1,2 (daily ed. Jan. 6, 2009) (official roll call).  She has continued to serve in that capacity in each successive Congress thereafter.  *See generally* 157 Cong. Rec. H1,2 (daily ed. Jan. 5, 2011); 159 Cong. Rec. H1,2 (daily ed. Jan. 3, 2013); 161 Cong. Rec. H1,2 (daily ed. Jan. 6, 2015).

Like nearly all Members of the House (with the exception of certain members of the House's leadership), Congresswoman Lummis has served, and continues to serve, on at least one committee of the House – currently, the Committee on Natural Resources and, importantly to this action, the Committee on Oversight and Government Reform ("Oversight Committee").  *See* Official Alphabetical List of the House of Representatives of the United States, 114th Congress (May 12, 2015), http://clerk.house.gov/committee_info/oal.aspx.[1]  The Oversight Committee – which has jurisdiction over the "economy, efficiency, and management of government

---

[1]  Congresswoman Lummis also served on the Oversight Committee in the 113th Congress.  *See* 159 Cong. Rec. H1,49 (daily ed. Jan. 4, 2013).

operations and activities," among other matters, Rule X(n)(6), Rules of the House of Representatives (114th Cong.), *available at* http://rules.house.gov/sites/ republicans.rules.house.gov/files/114/PDF/House-Rules-114.pdf – is considered the House's principal Executive Branch "watchdog," Press Release, Comm. on Oversight & Gov't Reform, A Constitutional Obligation:  Congressional Oversight of the Executive Branch (Sept. 22, 2010), *available at* http://oversight.house.gov/report/a-constitutional-obligation-congressional-oversight-of-the-executive-branch/.[2]

On March 20, 2015, Ms. Judd filed her Petition in the 7th Judicial District.  *See* Petition at 6.  On April 9, 2015, a copy of the Petition and a summons were served on a staffer at Congresswoman Lummis's Cheyenne district office.  *See* Summons at 2 (Apr. 13, 2015) (ECF No. 1-1, at 13-14).  On April 29, 2015, Congresswoman Lummis removed the matter to this Court, *see* Notice of Removal (ECF No. 1), and simultaneously moved for an extension of time in which to file a motion to dismiss, *see* Mot. for Extension of Time to File Answer or Move to Dismiss (ECF No. 5), which extension the Court granted on May 1, 2015, *see* Order (ECF No. 6).  On May 12, 2015, Ms. Judd filed a "Motion to Set Hearing" (ECF No. 9), which the Court denied on May 27, 2015, *see* Order (ECF No. 11).

---

[2]  For instance, "[b]etween 2011 and 2014, . . . [t]he Committee . . . investigated the inappropriate targeting of conservative groups by the Internal Revenue Service, the Administration's failed rollout of ObamaCare and its lack of transparency, the Department of Justice's Operation Fast and Furious, and the 2012 terrorist attack on the U.S. embassy in Benghazi."  Press Release, Comm. on Oversight & Gov't Reform, Legislative and Oversight Accomplishments of the House Committee on Oversight and Government Reform (Dec. 31, 2014), *available at* http://oversight.house.gov/report/legislative-oversight-accomplishments-house-committee-oversight-government-reform/.

# ARGUMENT

## I.     The Petition Must Be Dismissed for Lack of Subject Matter Jurisdiction.

Because Ms. Judd brought this action, it is her burden to establish this Court's subject

matter jurisdiction. *See Southway v. Cent. Bank of Nigeria*, 328 F.3d 1267, 1274 (10th Cir.

2003); *see, e.g.*, *BTU Western Resources, Inc. v. Berenergy Corp.*, 31 F. Supp. 3d 1346, 1353 (D.

Wyo. 2014). Ms. Judd has not met, and cannot meet, her burden.

### A.     This Suit Is Barred by the Speech or Debate Clause.[3]

Ms. Judd challenges Congresswoman Lummis's alleged acts or omissions with respect to

her legislative conduct, and apparently further seeks a judicial order compelling the

Congresswoman to wield the House's constitutionally committed impeachment power against

the President.

Congresswoman Lummis, however, enjoys absolute immunity from such claims under

the Speech or Debate Clause, U.S. Const. art. I, § 6, cl. 1 ("[F]or any Speech or Debate in either

House, [Members] shall not be questioned in any other Place."). Accordingly, "[t]he Speech or

Debate Clause operates as a jurisdictional bar" to this action. *Howard v. Office of Chief Admin.*

*Officer of U.S. House of Representatives*, 720 F.3d 939, 941 (D.C. Cir. 2013) (quotation marks

omitted); *accord Rockefeller v. Bingaman*, 234 F. App'x 852, 855-56 (10th Cir. 2007) (holding

that Speech or Debate Clause precluded district court's subject matter jurisdiction over claims

asserted against Members of Congress concerning "Congress' enactment of certain legislation

---

[3] Although the Court "ha[s] 'leeway to choose among threshold grounds for denying audience to
a case on the merits,'" *Troutt v. Jones*, 415 F. App'x 935, 938 (10th Cir. 2011) (quoting
*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007)), the Speech or
Debate Clause provides "the simplest ground" to dismiss the Petition here, *Rangel v. Boehner*,
--- F.3d ----, No. 14-5012, 2015 WL 2145743, at *2 (D.C. Cir. May 8, 2015) (choosing to affirm
dismissal on Speech or Debate grounds, notwithstanding other apparent jurisdictional defects,
namely – as here – standing and political question).

and the decision of individual Congressman not to take legislative action in response to [the plaintiff's] prompts"), *cert. denied*, 552 U.S. 1022 (2007); *see also Rangel*, 2015 WL 2145743, at *2 (explaining that dismissal on Speech-or-Debate grounds is "jurisdictional").

### 1.    Overview of the Speech or Debate Clause.

"[T]he whole American fabric has been erected" on the principle of Separation of Powers. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 176 (1803). "[N]one of [the three branches of the federal government] ought to possess, directly or indirectly, an overruling influence over the others, in the administration of their respective powers. It will not be denied, that power is of an encroaching nature, and that it ought to be effectually restrained from passing the limits assigned to it." The Federalist No. 48 (James Madison).

The Founders were acutely aware that simply dividing our government into three separate branches would not suffice to guarantee American liberty. Accordingly, they also included in the Constitution concrete mechanisms to make the Separation of Powers principle work – that is, mechanisms that would "provide some practical security for each [branch], against the invasion of the others." *Id.*; *see also* The Federalist No. 51 (James Madison or Alexander Hamilton) ("[T]he great security against a gradual concentration of the several powers in the same department, consists in giving to those who administer each department the necessary constitutional means and personal motives to resist encroachments of the others."). One such concrete, practical mechanism is the Speech or Debate Clause.

### a.    History and Purpose of the Clause.

The Speech or Debate Clause is rooted in the epic struggle for parliamentary independence in 16th- and 17th-century England. *See United States v. Johnson*, 383 U.S. 169, 178 (1966); *Tenney v. Brandhove*, 341 U.S. 367, 372 (1951) ("As Parliament achieved increasing

independence from the Crown, its statement of the privilege grew stronger. . . .  In 1689, the Bill of Rights declared in unequivocal language:  'That the Freedom of Speech, and Debates or Proceedings in Parliament, ought not to be impeached or questioned in any Court or Place out of Parliament.'"); *see also Rangel*, 2015 WL 2145743, at *2 (discussing history behind adoption of clause).  As a result of the English experience, "[f]reedom of speech and action in the legislature was taken as a matter of course" by the Founders, and reflected in the Speech or Debate Clause of our Constitution.  *Tenney*, 341 U.S. at 372; *see also Rangel*, 2015 WL 2145743, at *2 ("On this side of the Atlantic, the Philadelphia Convention adopted the speech or debate clause without much of either.").

The purpose of the Speech or Debate Clause "is to insure that the legislative function the Constitution allocates to Congress may be performed independently. . . .  [T]he 'central role' of the Clause is to 'prevent intimidation of legislators by the Executive and accountability before a possibly hostile judiciary . . . .'"  *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502 (1975) (quoting *Gravel v. United States*, 408 U.S. 606, 617 (1972), and *Johnson*, 383 U.S. at 181).  "In the American governmental structure the clause serves the additional function of reinforcing the separation of powers so deliberately established by the Founders."  *Johnson*, 383 U.S. at 178.[4]

Because "the guarantees of th[e Speech or Debate] Clause are vitally important to our system of government," they "are entitled to be treated by the courts with the sensitivity that

---

[4]  *See also Youngblood v. DeWeese*, 352 F.3d 836, 839 (3d Cir. 2003) ("Ensuring a strong and independent legislative branch was essential to the framers' notion of separation of powers. . . . The Speech or Debate Clause is one manifestation of this practical security for protecting the independence of the legislative branch . . . ."); *United States v. Myers*, 635 F.2d 932, 935-36 (2d Cir. 1980) ("[T]he Speech or Debate Clause . . . serves as a vital check upon the Executive and Judicial Branches to respect the independence of the Legislative Branch, not merely for the benefit of the Members of Congress, but, more importantly, for the right of the people to be fully and fearlessly represented by their elected Senators and Congressmen.").

such important values require." *Helstoski v. Meanor*, 442 U.S. 500, 506 (1979).  Accordingly, the Supreme Court has, "[w]ithout exception, . . . read the Speech or Debate Clause broadly to effectuate its purposes." *Eastland*, 421 U.S. at 501; *see also Doe v. McMillan*, 412 U.S. 306, 311 (1973) (same); *Gravel*, 408 U.S. at 624 (same); *Johnson*, 383 U.S. at 179-80 (same); *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1880) (similar).

**b.      Scope of the Clause.**

The protections afforded by the Speech or Debate Clause apply to all activities "within the 'legislative sphere,'" *McMillan*, 412 U.S. at 312 (quoting *Gravel*, 408 U.S. at 624-25), which includes all activities that are

> an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.

*Gravel*, 408 U.S. at 625; *accord Eastland*, 421 U.S. at 504; *Rangel*, 2015 WL 2145743, at *3.

This definition makes clear that the Clause's protections apply to both (i) the quintessentially legislative activity of "consideration and passage or rejection of proposed legislation," and (ii) "other matters which the Constitution places within the jurisdiction of either House."  *See, e.g.*, *Rangel*, 2015 WL 2145743, at *3 (holding that "congressional disciplinary proceeding," pursuant to U.S. Const. art. I, § 5, cl. 2, "f[e]ll comfortably within the scope of the Speech or Debate Clause").  Importantly for purposes of this case, these "other matters which the Constitution places within the jurisdiction of either House" include activities in furtherance of the Impeachment Clauses, U.S. Const. art. I, § 2, cl. 5 and § 3, cl. 6.  *See, e.g.*, *In re Request for Access to Grand Jury Materials*, 833 F.2d 1438, 1446 (11th Cir. 1987) ("The Speech [or] Debate Clause prevents us from questioning Congress about actions taken in the impeachment

process."); *Porteous v. Baron*, 729 F. Supp. 2d 158, 165 (D.D.C. 2010) (similar); *Hastings v. U.S. Senate, Impeachment Trial Comm.*, 716 F. Supp. 38, 42 (D.D.C.) (similar), *aff'd sub nom. Nixon v. U.S. Senate*, 887 F.2d 332 (D.C. Cir. 1989).

This definition also makes clear that the activities protected by the Clause are those which are "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings." *Eastland*, 421 U.S. at 504. While these activities plainly include "delivering an opinion, uttering a speech, [and] haranguing in debate," *United States v. Brewster*, 408 U.S. 501, 514 (1972) (quotation marks omitted), the courts have "not taken a literalistic approach in applying the privilege," *Gravel*, 408 U.S. at 617, and instead have broadly construed the Clause to include much more. For example, committee investigations and hearings are protected, *Eastland*, 421 U.S. at 504, as is information gathering, because "'[a] legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change,'" *Eastland*, 421 U.S. at 504 (quoting *McGrain v. Daugherty*, 273 U.S. 135, 175 (1927)). Drafting and introducing bills and resolutions, voting on bills and resolutions, negotiating with other Members regarding bills and resolutions, and preparing and using legislative reports also are protected, *see, e.g.*, *Fields v. Office of Eddie Bernice Johnson*, 459 F.3d 1, 10-11 (D.C. Cir. 2006) (en banc), as are preparations for such activities, *see, e.g.*, *Gravel*, 408 U.S. at 629 (Clause covers "any act . . . performed by the Senator, or by his aides . . . in preparation for the subcommittee hearing"); *Johnson*, 383 U.S. at 173-76 (Clause protects preparation of speech delivered by Member on House floor); *MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 861 (D.C. Cir. 1988) ("preparation of the statement for publication in the subcommittee report was part of the legislative process").

8

Finally, the Clause protects "'against inquiry into . . . the motivation for [legislative] acts.'" *Helstoski*, 442 U.S. at 489 (quoting *Brewster*, 408 U.S. at 525); *see also Johnson*, 383 U.S. at 180 (whether legislative activity improperly motivated "is precisely what the Speech or Debate Clause generally forecloses from executive and judicial inquiry"); *id.* at 184-85 (inquiry into Member's motives for engaging in legislative activities "necessarily contravenes the Speech or Debate Clause"). As the D.C. Circuit recently reaffirmed, "[i]nstead of looking into the defendants' 'motive or intent,' the standard for determining whether an act is legislative 'turns on the nature of the act' itself." *Rangel*, 2015 WL 2145743, at *3 (quoting *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998)).

### c.    Protections of the Clause.

The Speech or Debate Clause provides three broad protections, the most pertinent to this case being an immunity from suits predicated on actions "within the 'legislative sphere,'" *McMillan*, 412 U.S. at 312 (quoting *Gravel*, 408 U.S. at 624-25); *see also Eastland*, 421 U.S. at 503 ("In reading the Clause broadly we have said that legislators acting within the sphere of legitimate legislative activity should be protected not only from the consequences of litigation's results but also from the burden of defending themselves." (quotation marks omitted)); *Rangel*, 2015 WL 2145743, at *2 ("[T]he Speech or Debate Clause . . . provides absolute immunity from civil suit.").[5] And when the Clause applies, no matter the protection(s) implicated, the immunity is "absolute":

---

[5]  The Clause also provides (i) a non-disclosure privilege, which protects Members from having their legislative materials seized, and from being compelled to testify about their legislative activities or to produce legislative records, *see, e.g.*, *Gravel*, 408 U.S. at 615-16; *Helstoski*, 442 U.S. at 484-86; *United States v. Rayburn House Office Bldg.*, 497 F.3d 654, 660 (D.C. Cir. 2007), *cert. denied*, 552 U.S. 1295 (2008); *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 420-21 (D.C. Cir. 1995); *MINPECO,* 844 F.2d at 859-61; and (ii) a non-evidentiary use privilege, which bars civil plaintiffs and prosecutors from using "information as to a

> The question to be resolved is whether the actions of the petitioners fall within the "sphere of legislate legislative activity." If they do, the petitioners "shall not be questioned in any other Place" about those activities since the prohibitions of the Speech or Debate Clause are absolute.

*Eastland*, 421 U.S. at 501 (footnote omitted) (quoting *McMillan*, 412 U.S. at 312-13); *see also, e.g.*, *Gravel*, 408 U.S. at 623 n.14 (in criminal cases, Clause, where applicable, is "absolute").

## 2.      The Speech or Debate Clause Precludes This Suit.

The Petition overtly challenges acts or omissions by Congresswoman Lummis that "fall comfortably within the scope of the Speech or Debate Clause." *Rangel*, 2015 WL 2145743, at *3. For instance, the Petition complains about (i) "the passing of . . . laws," Petition ¶ e;[6] (ii) the manner in which the House has conducted (or not conducted) investigations of certain Executive Branch programs and activities, *see, e.g.*, *id.* ¶¶ h-i, l-o;[7] (iii) appropriations to "foreign enemies," *id.* ¶ g;[8] (iv) congressional involvement in the nation's "immigration laws," *id.* ¶ j;[9] and (v) Congress's non-impeachment of the President, *id.* ¶ k.[10]  Indeed, many of the illegal and unconstitutional actions of the Executive Branch that Congresswoman Lummis allegedly has "aided and abetted" are matters that the Oversight Committee has investigated during the

---

[protected] act" to advance their cases against those to whom the Clause applies, *see, e.g.*, *Helstoski*, 442 U.S. at 489, 490; *Johnson*, 383 U.S. at 173.

[6]  *See* U.S. Const. art. I, § 1 ("All legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives.").

[7]  *See supra* at 9 (citing *Eastland*, 421 U.S. at 504).

[8]  *See* U.S. Const. art. I, § 8, cl. 3 (granting Congress plenary power "[t]o regulate Commerce with foreign Nations"); *id.* § 9, cl. 7 ("No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law . . . .").

[9]  *See* U.S. Const. art. I, § 8, cl. 4 (granting Congress power "[t]o establish an uniform Rule of Naturalization").

[10]  *See* U.S. Const. art. I, § 2, cl. 5 ("The House of Representatives . . . shall have the sole Power of Impeachment."); *id.* § 3, cl. 6 ("The Senate shall have the sole Power to try all Impeachments.").

Congresswoman's tenure on that committee.[11] And, as relief, the Petition ostensibly seeks a judicial order compelling Congresswoman Lummis to pursue the impeachment of the President. *See id.* at 1.[12]

Ms. Judd may disagree with Congresswoman Lummis's "legislative judgment" on these matters, but "the Speech [or] Debate Clause precludes judicial reexamination of [the Congresswoman's] legislative policy choices." *Peterson v. Hatch*, No. 96-4023, 1996 WL 421946, at *1 (10th Cir. July 26, 1996) (unpublished) (affirming jurisdictional dismissal, on Speech or Debate grounds, where suit challenged Senator's "failure to take legislative action to eradicate the country's deficit/trade imbalance and his support of a balanced budget constitutional amendment"); *see supra* at 8-9 (discussing "legislative activities" covered by Clause); *see also Rockefeller*, 234 F. App'x at 855-56 (holding that Speech or Debate Clause barred action against Senators for voting for certain legislation alleged to be unconstitutional).

Moreover, Congresswoman Lummis's absolute immunity from suit over these matters cannot be, and is not, overborne by the Petition's perfunctory assertions that the Congresswoman

---

[11] *Compare, e.g.*, Petition ¶¶ i, *l-o*, p(H)-(I), q (allegations concerning abuse of executive power; national immigration policy; Operation Fast and Furious; the attacks in Benghazi, Libya; NSA data collection; IRS targeting of certain 501(c)(4) organizations; and net neutrality rules), *with* Legislative & Oversight Accomplishments Report, *supra*, at 136-45 (Operation Fast and Furious); *id.* at 146-52 (Benghazi, Libya attacks); NSA Internal Watchdog Act, H.R. 4533, 113th Cong. (2014) (proposing the creation of an inspector general for NSA) (referred to Oversight Committee on April 30, 2014); Legislative & Oversight Accomplishments Report, *supra*, at 69-75 (IRS targeting); *FCC: Process and Transparency: Hearing Before H. Comm. on Oversight & Gov't Reform*, 161 Cong. Rec. H1665,D291 (daily ed. Mar. 17, 2015) (examining transparency and independence issues with respect to the FCC's process for developing net neutrality rules), *available at* http://oversight.house.gov/hearing/fcc-process-transparency/.

[12] To the extent that the Petition could be construed to seek a judicial order compelling the House to discipline Congresswoman Lummis, *see, e.g.*, Petition at 5 ¶¶ r-s, 2, we note that such relief also is barred by the Speech or Debate Clause, *see, e.g.*, *Rangel*, 2015 WL 2145743, at *3 (holding that "congressional disciplinary proceeding" is "a 'legislative' matter that 'the Constitution places within the jurisdiction of [the] House'" (quoting *Gravel*, 408 U.S. at 625)).

engaged in "illegal and unconstitutional" conduct while performing her legislative duties.  "This 'familiar' argument – made in almost every Speech or Debate Clause case – has been rejected time and again."  *Rangel*, 2015 WL 2145743, at *3 (citing cases).  Simply put, "[a]n act does not lose its legislative character simply because a plaintiff alleges that it violated . . . the Constitution.  Such is the nature of absolute immunity, which is – in a word – absolute."  *Id.* (citations omitted).

## B.    This Suit Presents Non-Justiciable Political Questions.

The political question doctrine is "essentially a function of the separation of powers." *Baker v. Carr*, 369 U.S. 186, 217 (1962).  The doctrine "excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 (1986); *see also United States v. Munoz-Flores*, 495 U.S. 385, 394 (1990) (explaining that "doctrine is designed to restrain the Judiciary from inappropriate interference in the business of the other branches of Government"); *Schroder v. Bush*, 263 F.3d 1169, 1173 (10th Cir. 2001) ("Prudence, as well as separation-of-powers concerns, counsels courts to decline to hear political questions." (quotation marks omitted)).

"That some governmental actions are beyond the reach of the courts reflects the Constitution's limitation of the 'judicial power of the United States' to 'cases' or 'controversies.'"  *El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 840 (D.C. Cir. 2010) (quoting U.S. Const. art. III, § 2); *accord Hanson v. Wyatt*, 552 F.3d 1148, 1159 (10th Cir. 2008) ("[J]urisdiction and justiciability both arise out of Article III.").  "It is therefore familiar

learning that no justiciable 'controversy' exists when parties seek adjudication of a political

question . . . ."  *Massachusetts v. E.P.A.*, 549 U.S. 497, 516 (2007).

A claim presents a political question when it involves:

> [1] a textually demonstrable constitutional commitment of the
> issue to a coordinate political department; or [2] a lack of judicially
> discoverable and manageable standards for resolving it; or [3] the
> impossibility of deciding without an initial policy determination of
> a kind clearly for nonjudicial discretion; or [4] the impossibility of
> a court's undertaking independent resolution without expressing
> lack of the respect due coordinate branches of government; or
> [5] an unusual need for unquestioning adherence to a political
> decision already made; *or* [6] the potentiality of embarrassment
> from multifarious pronouncements by various departments on one
> question.

*Baker*, 369 U.S. at 217 (emphasis added).  "'To find a political question, [this Court] need only

conclude that *one* [of these] factor[s] is present, not all.'"  *El-Shifa*, 607 F.3d at 841 (emphasis

added) (quoting *Schneider v. Kissinger*, 412 F.3d 190, 194 (D.C. Cir. 2005)); *accord People of

Colo. ex rel. Suthers v. Gonzales*, 558 F. Supp. 2d 1158, 1161 (D. Colo. 2007) (same).

Here, reaching the merits of this suit plainly would contravene *Baker*'s first prong

because, as explained above, the constitutional power to initiate an impeachment is textually

committed to the House.  *See supra* at 8 (citing U.S. Const. art. I, § 2, cl. 5).  Reaching the merits

of this action also would violate *Baker*'s second and third prongs, as there are no "judicially

discoverable or manageable standards" by which to evaluate a lawmaker's decision either to

pursue or forego legislative acts, including impeachment – which decision, in any event, involves

"an initial policy determination of a kind clearly for nonjudicial discretion."  396 U.S. at 217.

And, the Petition invites the Court to violate *Baker*'s fourth prong, insofar as the Petition

(i) questions matters surrounding the alleged decision not to impeach the President, examination

of which would require an invasive inquiry into internal House operations that lie at the very

heart of the House's constitutional prerogatives, and (ii) ostensibly seeks a court order directing a

Member of Congress to introduce legislation calling for the President's impeachment (e.g.,

Articles of Impeachment or a resolution to be referred to the appropriate Committee[13]), which

order self-evidently would prove beyond disrespectful of a coordinate branch.  *Cf. supra*

Argument, Part I.A.1.a (discussing purpose behind Speech or Debate Clause); *infra* Argument,

Parts I.C.3 and II.B (discussing impropriety of ordering mandamus against Congress).  The

Court therefore must dismiss the Petition.

### C.   Ms. Judd Lacks Article III Standing.

Standing is a jurisdictional prerequisite to suit in federal court.  *See Valley Forge*

*Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 475-76

(1982); *Utah v. Babbitt*, 137 F.3d 1193, 1201 (10th Cir. 1998).  To satisfy this prerequisite, a

plaintiff must establish (i) an actual or threatened injury, (ii) resulting from the action challenged,

which is (iii) likely to be redressable in a judicial action.  *See Lujan v. Defenders of Wildlife*, 504

U.S. 555, 560-61 (1992); *Citizens Center v. Gessler*, 770 F.3d 900, 909 (10th Cir. 2014)

("Constitutional standing involves three elements: (1) injury in fact; (2) causation; and

(3) redressability.").  The plaintiff bears the burden of establishing all three elements, *see*

*Robertson v. Colvin*, 564 F. App'x 931, 933 (10th Cir. 2014), each of which "must be supported

in the same way as any other matter on which the plaintiff bears the burden of proof," *Lujan*, 504

U.S. at 561.

---

[13]   *See* T.J. Halstead, Cong. Research Serv., 98-806, An Overview of the Impeachment Process 2
(2005), *available at* http://www.senate.gov/reference/resources/pdf/98-806.pdf; *see generally*
Elizabeth B. Bazan, Cong. Research Serv., 98-186, Impeachment:  An Overview of
Constitutional Provisions, Procedure, and Practice (2010), *available at* http://www.senate.gov/
CRSReports/crs-publish.cfm?pid=%26*2%3C4P%5C%3B%3D.

Here, Ms. Judd has not demonstrated, and cannot demonstrate, injury, causation, or redressability – let alone all three elements.

1.  To establish injury, a plaintiff must show more than simply "a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens."  *Bd. of Cnty. Comm'rs of Sweetwater Cnty. v. Geringer*, 297 F.3d 1108, 1112 (10th Cir. 2002) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).  Rather, a plaintiff must show that she personally has suffered an injury that is "concrete, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560 (quotation marks omitted); *see also Chrisman v. Comm'r of Internal Revenue*, 82 F.3d 371, 373 (10th Cir. 1996) ("'[S]tanding to sue may not be predicated upon an interest . . . which is held in common by all members of the public, because of the necessarily abstract nature of the injury all citizens share.'" (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 220 (1974))).

Here, the only injuries that Ms. Judd has claimed are generalized harms allegedly suffered by "the people of Wyoming."  Petition at 2; *see also, e.g.*, *id.* ¶ a (asserting interest of "Wyoming Citizens of the United States of America"); *id.* ¶ b (alleging "dangers to Americans" and "Wyoming citizens"); *id.* ¶ c (alleging that "the citizens of Wyoming . . . fear for the . . . depletion of liberties and freedoms"); *id.* ¶ j (alleging that "Americans [are] in undignified positions"); *id.* ¶ k (alleging that Congresswoman Lummis has "disregard[ed] . . . her constituents['] requests, pleads, and demands"); *id.* ¶ o (alleging that President misled "the American people"); *id.* ¶ p(E) (alleging harm to "millions of Americans"); *id.* ¶ p(K) (alleging harm to "the Second Amendment rights of American citizens"); *id.* ¶ r (alleging that Congresswoman Lummis "has not upheld her oath of office"); *id.* ¶ s (alleging "separation of the Wyoming citizens whom [Congresswoman Lummis] currently serves").  Although Ms. Judd

apparently "is sincere and motivated to pursue [her] case, the court cannot exercise [Article III]

jurisdiction for [such] generalized grievances." *Chrisman*, 82 F.3d at 373.

2.  Even assuming that Ms. Judd had articulated a sufficient injury-in-fact, such injury

still would not be "fairly traceable" to *Congresswoman Lummis*'s conduct.  *See Castillo-*

*Hernandez v. Holder*, 596 F. App'x 645, 648 (10th Cir. 2014) (injury must be "'fairly traceable

to the challenged action of *the defendant*'" (emphasis added) (quoting *Awad v. Ziriax*, 670 F.3d

1111, 1120 (10th Cir. 2012))).  To the contrary, the clear gravamen of the Petition is alleged

misconduct by *the Executive Branch* (and the President in particular).[14]  At best, Ms. Judd claims

here only that Congresswoman Lummis failed to prevent and/or remedy harms caused by the

Executive Branch.  But Congresswoman Lummis's inaction still could not be the but-for cause

of Ms. Judd's alleged injuries because, as we explain below, the Congresswoman could not

impeach the President by herself; she would have needed the support of at least 217 other

Members of the House and 67 Senators (who are not parties to this action) to do so.

---

[14]  *See, e.g.*, Petition at 2 (President Obama "has not upheld his oath of the constitution"); *id.* ¶ c
(President Obama has caused "the depletion of liberties and freedoms . . . and plung[ed] the
American people into a communist country"); *id.* ¶ d ("miss leading [sic] and false statements
and actions of [President] Obama"); *id.* ¶ e ("illegal and unconstitutional laws, bills, and
executive orders of [President] Obama"); *id.* ¶ f ("[President] Obama's illegal birth records,
fraudulent SS card, and fraudulent civil service records, and misrepresentation of his true
identity"); *id.* ¶ i ("[President] Obama's miss use [sic] of powers, unconstitutional statements,
and miss leading [sic] conducts, unlawful inquiries, or contravening the laws"); *id.* ¶ k (President
Obama's "tyrannical and treasonous actions" and "non-compliance of, and continual disrespect
and contempt to the laws of the constitution of the United States"); *id.* ¶ l (misuse of "the
Executive Privilege"); *id.* ¶ m ("members of [the President's] administration provide[d] false
information" and "refus[ed] . . . to cooperate in the Congressional investigation" into the
September 11, 2012 attacks in Benghazi, Libya); *id.* ¶ n (former Attorney General "Eric Holder
and the DOJ . . . target[ed] the phone records of members of the news media"); *id.* ¶ o (President
lied about "the NSA . . . not prying into the emails and phone calls of Americans"); *id.* ¶ p
(President "has repeatedly violated his oath of office," listing eleven examples); *id.* ¶ q (President
"falsely labeled the mass murder of American soldiers at Ft. Hood, Texas as 'workplace
violence'").

Under these circumstances – "when the plaintiff is not h[er]self the object of the government action or inaction [s]he challenges" – standing becomes "substantially more difficult to establish." *Lujan*, 504 U.S. at 562. Rather than meet this heightened burden, however, Ms. Judd provides no explanation at all to establish Congresswoman Lummis's connection to the generalized harms allegedly caused by the Executive Branch. The claims in the Petition turn purely "on speculation about 'the unfettered choices made by independent actors not before the court,'" which cannot support Article III standing here. *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1150 n.5 (2013) (quoting *Lujan*, 504 U.S. at 562).

3. Finally, setting aside the fatal absence of any Article III injury fairly traceable to Congresswoman Lummis, Ms. Judd has not shown – and cannot show – that it is "likely, as opposed to merely speculative, that [her] injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (quotation marks omitted).

As a preliminary matter, the Court simply cannot order Congresswoman Lummis "to take action on matters specifically delegated to Congress by the Constitution," *Orta Rivera v. Congress*, 338 F. Supp. 2d 272, 279 (D.P.R. 2004), including by "an injunction or a writ of mandamus," *Trimble v. Johnston*, 173 F. Supp. 651, 653 (D.D.C. 1959); *accord Smith v. Cassidy*, No. 14-cv-647, 2015 WL 803145, at *2 (M.D. La. Feb. 25, 2015) ("Plaintiffs fail to establish the element of redressability because the Court lacks authority to direct a legislator to act in a particular way, engage in specific legislative acts, or initiate investigations.").[15]

---

[15] *See also Smith & Lee Assocs., Inc. v. City of Taylor, Mich.*, 102 F.3d 781, 797 (6th Cir. 1996) ("Federal Courts do have jurisdiction and power to pass upon the constitutionality of Acts of Congress, but we are not aware of any decision extending this power in Federal Courts to order Congress to enact legislation." (quotation marks omitted)); *Luevano v. U.S. Supreme Court*, No. 12-cv-00200, 2012 WL 1491865, at *2 (D. Haw. Apr. 27, 2012) ("This court has no power to compel Congress to legislate, investigate, hold hearings, or otherwise act at [plaintiff's] behest."); *Michigan v. U.S. Army Corps of Engineers*, 911 F. Supp. 2d 739, 758 n.16 (N.D. Ill.

In any event, an order directing Congresswoman Lummis to pursue the President's impeachment – which order would contravene both the Speech or Debate Clause, *see supra* Argument, Part I.A,  and the separation of powers, *see supra* Argument, Part. I.B – would redress nothing.  This is so because even if Congresswoman Lummis were compelled to introduce Articles of Impeachment against the President, nothing would require the whole House of Representatives to consider them, let alone to vote on them, let alone to pass them by majority vote.  *See generally* Halstead, *supra* note 13, at 3-4.  Nor would an order against Congresswoman Lummis require the Senate to return a conviction by two-thirds vote, were the House to pass any Articles of Impeachment.  *See id.* at 4-5.  And even if the Senate ultimately did convict the President, that conviction would result only in the President's removal from office, *see id.* at 5-6; U.S. Const. art. I, § 3, cl. 7 – which removal would neither remedy any past harms caused by the President's misconduct, nor guarantee that the administration's allegedly unlawful policies and practices would end with his presidency.

The same would be true of any order purporting to direct Congresswoman Lummis's removal from office.  *See, e.g.*, Petition at 5, ¶¶ 1-2.  The Constitution vests the House alone with the power to discipline its Members.  *See* U.S. Const. art. I, § 5, cl. 2 ("Each House may . . . punish its Members for disorderly Behavior, and, with the Concurrence of two thirds, expel a Member.").  The Court therefore lacks the authority to order her removal.

---

2012) ("It would violate the constitutional principle of separation of powers for a court to direct Congress to enact legislation the Court deems necessary to abate a public nuisance."), *aff'd*, 758 F.3d 892 (7th Cir. 2014); *Kelley v. Wall*, No. 10-cv-00233, 2010 WL 5176172, at *5 (D.R.I. Nov. 30, 2010) (similar); *Lewis v. D.C. Judiciary*, 534 F. Supp. 2d 84, 85-86 (D.D.C. 2008) (holding that courts cannot compel Congress to perform constitutional rulemaking function).

Finally, and for similar reasons, a declaratory judgment would not fully resolve Ms. Judd's grievances against either the Executive Branch or Congresswoman Lummis.[16]

\*          \*          \*

Because Ms. Judd has not shown, and cannot show, that she satisfies all three requirements for Article III standing, the Court must dismiss the Petition pursuant to Rule 12(b)(1).

### D.    This Suit Is Barred by Sovereign Immunity.

1. "The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (citations omitted); *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."). "Federal courts generally deem a suit for specific relief, *e.g.*, injunctive or declaratory relief, against a named officer of the United States to be a suit against the sovereign." *Wyoming v. United States*, 279 F.3d 1214, 1225 (10th Cir. 2002). Accordingly, Members of Congress, when sued for "acting in their official capacities, enjoy the envelope of the Congress' sovereign immunity." *Rockefeller*, 234 F. App'x at 855.

Sovereign immunity can be waived only by "unequivocally expressed . . . statutory text." *Lane v. Pena*, 518 U.S. 187, 192 (1996). And even once expressed, waivers of sovereign immunity further "must be construed strictly in favor of the sovereign." *Haceesa v. United*

---

[16] Under these circumstances – when declaratory relief will not "settle the controversy" between the parties – withholding such relief is proper. *United States v. City of Las Cruces*, 289 F.3d 1170, 1187 (10th Cir. 2002); *see also* 10B Charles Alan Wright & Arthur R. Miller, Fed. Practice & Proc. § 2759 (3d ed. Supp. 2013) ("One of the most important considerations that may induce a court to deny declaratory relief is that the judgment sought would not settle the controversy between the parties.").

*States*, 309 F.3d 722, 728 (10th Cir. 2002).  Absent an express and unequivocal statutory waiver, courts have no subject matter jurisdiction over claims against Members of Congress sued in their official capacities.  *See Rockefeller*, 234 F. App'x at 855-56.

Here, Ms. Judd has asserted claims against Congresswoman Lummis in her official capacity seeking declaratory and/or injunctive relief.  The Petition, however, points to no express, unequivocal statutory waiver of sovereign immunity to permit such claims.[17]

2.  In addition, the Petition initially was filed in state court where, "[u]nequivocally, sovereign immunity shields the federal government from suit . . . ."  *Wolff v. United States*, 76 F. App'x 867, 869 (10th Cir. 2003) (citing cases); *accord Houston Bus. Journal, Inc. v. Office of Comptroller of Currency*, 86 F.3d 1208, 1211 (D.C. Cir. 1996) ("In state court the federal government is shielded by sovereign immunity . . . .").  This fatal jurisdictional defect cannot be, and was not, cured by Congresswoman Lummis's removal of this matter pursuant to § 1442(a).

The "[federal] [c]ourt cannot acquire jurisdiction over the subject matter of the suit unless the state court properly had jurisdiction over the subject matter."  *Spence v. Flynt*, 647 F. Supp. 1266, 1269 (D. Wyo. 1986); *see also In re Gray*, No. 97-6385, 162 F.3d 1172 (10th Cir. 1998) (unpublished) ("The federal court's jurisdiction on [§ 1442(a)] removal is purely derivative and does not enlarge or contract the rights of the parties.").  Thus, when – as here – the state court lacked subject matter jurisdiction prior to removal, the jurisdictional defect follows the matter to

---

[17]  To the extent Ms. Judd alleges that Congresswoman Lummis somehow was "negligen[t]" in performing her official duties, Petition ¶ c, and assuming further that such "negligence" could support a claim under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2401(b), 2671-80 – which provides a limited waiver of sovereign immunity – Ms. Judd still would be barred from bringing her claims in this Court because she has failed to exhaust her administrative remedies with the House, *see* 28 U.S.C. § 2675(a); *see generally* Decl. of Todd B. Tatelman, Sr. Ass't Counsel (attached hereto as Exhibit A) (averring that there is no record of Ms. Judd filing an FTCA claim with House).

federal court, where the matter must be dismissed.  *See Arizona v. Manypenny*, 451 U.S. 232,

242 n.17 (1981) ("[I]t is well settled that if the state court lacks jurisdiction over the subject

matter or the parties, the federal court acquires none upon removal, even though the federal court

would have had jurisdiction if the suit had originated there."); *see, e.g.*, *Bullock v. Napolitano*,

666 F.3d 281, 286 (4th Cir. 2012) (affirming Rule 12(b)(1) dismissal of official-capacity suit

brought against federal official in state court and removed to federal court pursuant to

§ 1442(a)); *Bowers v. J & M Disc. Towing, LLC.*, 472 F. Supp. 2d 1248, 1265 (D.N.M. 2006)

("[B]ecause the Court has determined that the state court did not have jurisdiction over Bowers'

cause of action against J & M, to the extent that the United States removed this matter pursuant

to 28 U.S.C. § 1442, the Court does not have jurisdiction over the case." (citation omitted)).[18]

## II.     The Petition Should Be Dismissed for Failure to State a Claim upon Which Relief Can Be Granted.

Not only has Ms. Judd failed to demonstrate that the Court has subject matter jurisdiction

over this action, she likewise has not pled "enough facts to state a claim to relief that is plausible

on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Plausibility requires "more than a sheer possibility that a defendant has acted

unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[M]ere labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not suffice; a plaintiff must offer

specific factual allegations to support each claim." *Burnett v. Mortg. Elec. Registration Sys.,

Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (quotation marks omitted)); *see also Dorf v. City of

Evansville*, No. 11-cv-351, 2012 WL 1440343, at \*5 (D. Wyo. Apr. 22, 2012) ("[C]onclusory

---

[18]   Moreover, to the extent that the Petition could be construed to allege a negligence claim actionable under the FTCA, *see supra* note 17, "the district courts of the United States have exclusive jurisdiction over such actions," *Singletary v. United States*, 82 F. App'x 621, 624 (10th Cir. 2003) (citing 28 U.S.C. § 1346(b)(1)).

allegations devoid of factual support are plainly insufficient post-*Iqbal* and *Twombly* to state a proper claim for relief."), *aff'd sub nom. Dorf v. Bjorklund*, 531 F. App'x 836 (10th Cir. 2013). Simply put, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burnett*, 706 F.3d at 1235 (quotation marks omitted). The Petition here fails to do so on several scores. And because amendment would be futile, it should be dismissed with prejudice. *See Curley*, 246 F.3d at 1282.

    A. <u>Generally</u>. The Petition principally complains about the Congresswoman's alleged legislative action/inaction concerning certain policies and practices of the Executive Branch. To the extent that Ms. Judd is dissatisfied with Congresswoman Lummis's legislative judgments, she has failed to state a claim because she has "no constitutional right to have [her] Congress[wo]man . . . make particular decisions or take particular actions." *Adams v. Richardson*, 871 F. Supp. 43, 45 (D.D.C. 1994).[19] Moreover, even assuming that Congresswoman Lummis owed Ms. Judd a duty to legislate and/or to act consistent with Ms. Judd's political preferences, and further breached such a duty, the Petition fails to show

---

[19] *Accord Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992) (upholding dismissal of claim against Congressman arising out of service to constituent, stating that "[f]or the federal judiciary to subject members of Congress to liability for simply doing their jobs would be unthinkable"), *cert. denied*, 510 U.S. 842 (1993); *Richards v. Harper*, 864 F.2d 85, 88 (9th Cir. 1988) (affirming district court's conclusion that constituent cannot sue for damages simply because representative fails to perform according to constituent's wishes); *Liao v. Ashcroft*, No. 08-cv-2776, 2009 WL 1066302, at *5 (N.D. Cal. Apr. 21, 2009) ("A member of Congress' refusal to assist a constituent in response to the constituent's request for help does not create a cognizable claim." (citing cases)); *Nellis v. Gonzales*, No. 06-cv-1704, 2007 WL 1033517, at *2 (D.D.C. Mar. 30, 2007) (holding that plaintiff failed to state claim by "alleg[ing] that he took various grievances to [Members of Congress and their staff] and was dissatisfied with their responses," because "[n]othing in the First Amendment or this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues" (quotation marks omitted)); *cf. Lance v. Coffman*, 549 U.S. 437, 439 (2007) (reaffirming "lengthy pedigree" of Supreme Court's refusal "to serve as a forum for general grievances" about government).

how, if at all, Ms. Judd was injured because of such breach.  *See supra* Argument, Part. I.C.3

(discussing Petition's failure to show causation for purposes of Article III standing).

   B.  <u>Mandamus</u>.  As explained above, *see supra* Argument, Part I.C.3, "the Federal courts

may not issue . . . a writ of mandamus against the Congress," *Trimble*, 173 F. Supp. at 653.  But,

even if they could, the Petition here seeks to compel far more than the fulfillment of a

"ministerial, clearly defined and peremptory" duty owed to Ms. Judd.  *Rios v. Ziglar*, 398 F.3d

1201, 1207 (10th Cir. 2005) (quotation marks omitted); *see also Marathon Oil Co. v. Lujan*, 937

F.2d 498, 500 (10th Cir. 1991) ("Mandamus relief is an appropriate remedy to compel [the

government] to act where it has failed to perform a nondiscretionary, ministerial duty.").

Accordingly, the Petition fails to state a claim for mandamus.  *See, e.g.*, *Pinnow v. Shoshone

Tribal Council*, 314 F. Supp. 1157, 1160-61 (D. Wyo. 1970) (holding that "an order in the nature

of a writ of mandamus will not lie" where federal official's authority was "not a ministerial duty

owed individually to each [plaintiff]" but instead was "supervisory and discretionary").

   C.  <u>Alleged violation of 5 U.S.C. § 7311</u>.  The Petition claims that Congresswoman

Lummis "is in violation of 5 U.S.C. § 7311" because she allegedly "'advocate[s] the overthrow

of our constitutional form of government.'"  Petition at 5, ¶ 1 (quoting 5 U.S.C. § 7311(1)).

Section 7311, however – a provision of the federal Labor Code – provides no private cause of

action, nor could one be implied:  The statute contains no "rights-creating language . . .

that . . . explicitly confer[s] a right directly on a class of persons that include[s] the plaintiff."

*Boswell v. Skywest Airlines, Inc.*, 361 F.3d 1263, 1267 (10th Cir. 2004) (quotation marks

omitted).  "[P]rohibitory language alone is not evidence of congressional intent to create a

private right of action."  *Sw. Air Ambulance, Inc. v. City of Las Cruces*, 268 F.3d 1162, 1172 n.4

(10th Cir. 2001).  Moreover, and in any event, subsection 1 of § 7311 was ruled unconstitutional

by a three-judge panel over forty years ago.  *See Stewart v. Washington*, 301 F. Supp. 610, 612 (D.D.C. 1969) (three-judge panel) (per curiam).

      D.  <u>Impeachment Under the Wyoming State Constitution</u>.  The Petition also threatens Congresswoman Lummis's impeachment "per Article III Section 16 & 18 of the Wyoming Constitution," Petition at 5, ¶ 2, and alleges that the Congresswoman has violated "her oath of office as per the Wyoming Constitution," *id.* ¶ r.[20]  However, Wyoming's constitution – including its impeachment and oath-of-office clauses – self-evidently does not apply to Members of the U.S. House of Representatives.  *See* Wyo. Const. art. III, § 18 ("The governor and other *state* . . . officers . . .  shall be liable to impeachment . . . ." (emphasis added)); *id.* art. VI, § 20 (requiring state "[s]enators and representatives and all judicial, state and county officers" to take an oath or affirmation office).  Moreover, as explained above, the U.S. Constitution vests the House with the sole power to discipline its Members.  *See supra* at 19.

**CONCLUSION**

      For the foregoing reasons, the Court must dismiss the Petition, with prejudice.

---

[20]  Ms. Judd specifically invoked Article VI, § 20 of the Wyoming state constitution for this latter proposition in other filings she lodged in the Seventh Judicial District before this matter was removed.  *See, e.g.*, Mot. for an Order to Show Cause at 1 (Apr. 13, 2015) (ECF No. 1-1, at 16).

Respectfully submitted,

KERRY W. KIRCHER, D.C. Bar No. 386816
General Counsel
WILLIAM PITTARD, D.C. Bar No. 482949
Deputy General Counsel
*/s/ Isaac B. Rosenberg*
ISAAC B. ROSENBERG, D.C. Bar No. 998900
Assistant Counsel
SARAH E. CLOUSE, MA Bar No. 688187
Staff Attorney

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C. 20515
Phone: (202) 225-9700
Fax:     (202) 226-1360
Isaac.Rosenberg@mail.house.gov
Sarah.Clouse@mail.house.gov

*Counsel for Respondent the Honorable Cynthia
Lummis, U.S. Representative for Wyoming*

June 8, 2015

# CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2015, I filed the foregoing Memorandum of Points and

Authorities in Support of Motion to Dismiss of Respondent the Honorable Cynthia Lummis via

the CM/ECF system of the U.S. District Court for the District of Wyoming, which I understand

caused service on all registered parties.  I further certify that I served one copy by first class

mail, postage prepaid, on:

Ms. Jacqueline S. Judd
155 North Fenway Street
Casper, WY  82601


_/s/ Sarah E. Clouse_
Sarah E. Clouse